IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-2076-GPG-KAS

JOHN DOE,

      Plaintiff,

v.

COLORADO STATE UNIVERSITY, THE BOARD OF GOVERNORS OF THE COLORADO
STATE UNIVERSITY, *et al.*,

      Defendants.

---

**DEFENDANTS' MOTION TO DIMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
[ECF 22]**

---

      Defendants, Colorado State University, The Board of Governors of the Colorado State University, and Tony Frank, Amy Parsons, Blanche Hughes, Craig Chesson, Ariaña Muñiz, Michael Katz, Erica Exline, Dan Schorr, and Justin Schwendeman-Curtis, in their official and individual capacities (collectively, "Defendants"), through undersigned counsel, hereby move to dismiss each count of Plaintiff Doe's First Amended Complaint ("Complaint") (ECF 22), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

      **D.C.COLO.LCivR 7.1 certification**: Undersigned counsel conferred with Doe's counsel about the underlying bases for this motion on October 9 and 16, 2024. Doe opposes.

## INTRODUCTION

      Plaintiff Doe, a former student at Colorado State University ("CSU"), asserts due process, gender discrimination, contract, and quasi-contract claims arising out of disciplinary proceedings initiated against him in June 2022 for violations of CSU's sexual misconduct policy.

In a lengthy Complaint that is heavy with expositions on statutory, regulatory, and CSU authorities, Doe expresses his belief that the student disciplinary action taken against him was grounded in an incomplete and incompetent investigation and a flawed hearing that lacked essential due process guarantees. Therefore, Doe concludes, his expulsion by CSU could only have been motivated by gender bias against male students. In short, Doe argues that the failure to provide him with the equivalent of a criminal trial violated his Fourteenth Amendment right to due process and Title IX's prohibitions against gender discrimination. His contract and quasi-contract claims arise out of CSU's policies and procedures.

Doe's allegations fall short of the Tenth Circuit's high standard for alleging gender discrimination within the student disciplinary context because they are based only on speculation and the fact that Doe is a male, as opposed to any plausible allegations of intentional discriminatory conduct. He relies on conclusory allegations that CSU acted on pressure from the federal government to vigorously address sexual misconduct complaints, but rather than present actual numbers of disproportion between males and females disciplined for sexual misconduct, Doe merely guesses that CSU must possess statistical evidence to back up his assertion.

Doe's constitutional claims fail because they are grounded in a fundamental misunderstanding of the level of due process accorded in student disciplinary proceedings. Although the disciplinary action here was taken in response to alleged criminal conduct, it does not follow that Doe was entitled to a heightened level of procedural protections during the student conduct process. His remaining claims for breach of contract and quasi-contract claims fail as a matter of law because they are barred by the governmental immunity act or fail to allege facts to satisfy the elements of such claims.

While Doe may vigorously disagree with the outcome, that will not support a claim for gender discrimination, denial of due process, or breach of contract.

## BACKGROUND[1]

Doe is a former student at CSU who, at the time of the incident in question, was engaged in an internship as a Registered Behavior Technician at Wild Sun Behavioral Services in Erie, Colorado. ECF 22, ¶¶ 1, 74. Defendants are various CSU officials, including staff members tasked with investigating and adjudicating Title IX complaints and violations of the Student Code of Conduct. ECF 22, ¶¶ 43-51.

On or about June 13, 2022, the CSU Office of Title IX Programs and Gender Equity ("OGE") received a report of a criminal investigation by law enforcement in Erie of alleged sexual contact between Doe and a five-year old child, during Doe's internship at Wild Sun, on some date between March 25, 2022, and May 25, 2022. *Id.* at ¶¶ 1, 74-80.[2] On July 20, 2022, Title IX Coordinator and Director, Defendant Ariaña Muñiz, served Doe with a formal Notice of Investigation and Allegations of sexual misconduct against him, and advised that CSU had placed restrictions on his internship placement. *Id.* at ¶ 5. As directed by Muniz, Defendant Erica Exline, Investigator for the OGE and Student Resolution Center ("SRC"), conducted interviews and obtained reports from the Erie Police Department as part of an investigation that lasted for nearly one year. *Id.* at ¶¶ 7, 13, 80. According to Doe's version of events, the child's parents refused to execute releases to allow the full investigative file to be reviewed by the CSU

---

[1] Additional factual allegations will be discussed in the Argument sections of this Motion.

[2] According to Defendant Erica Exline's report, the Executive Director of Wild Sun reported the incident to CSU's Internship Coordinator, who then reported it to Exline's office. *See* ECF 2.3, Exhibit 2 at 6. The Internship Coordinator is not a party to this case.

Investigator. *Id.* at ¶ 118. On May 11, 2023, Exline submitted the Student Conduct Investigation

Report to the SRC. *Id.* at ¶¶ 119, 121-22.

On May 30, 2023, nearly one year after he was first notified of the underlying complaint,

Doe received notice that the incident had been referred to the SRC, along with a copy of Exline's

90-page report and notice that the Defendants Michael Katz, Director of the SRC, and Dan

Schorr, University Hearing Officer, had set a hearing for seven days later. ECF 22, ¶¶ 14-15, 37-

38, 123. The hearing was delayed, at Doe's request, to allow him time to review the materials

and obtain an expert to review the investigation file and provide a report. *Id.* at ¶¶ 17-18, 124.

SRC agreed to re-set the hearing for June 29, 2023, *id.* at ¶ 124, but Doe's proposed expert was

not available to appear on this date. *Id.* at ¶¶ 18, 124, 135.

As provided by the Student Conduct Code ("Code"), Doe submitted questions for the

witnesses but was not permitted to question the witnesses himself or via his attorney advisor.

ECF 22, ¶¶ 20, 59, 72(i), 125. The hearing officer, Schorr, did not ask many of the questions

submitted by Doe, deeming them "irrelevant". *Id.* at ¶¶ 20-21, 125(e). Several witnesses either

refused to attend (including the alleged victim and his mother (*Id.* at ¶ 126), and his mother's

friend (*Id.* at ¶ 122(n)), or refused to discuss certain information at the hearing citing "privilege"

(e.g., the forensic interviewer and SANE nurse) because the child's mother refused to sign

releases to allow their testimony or access to the forensic interviews obtained by the Erie police.

*Id.* at ¶¶ 8-10, 22-23. According to Doe, CSU did not hire a forensic psychologist to assess the

reliability of a child's testimony, conduct a proper interview of a child witness, or provide expert

consultation on the proper methods for interviewing a child in legal proceedings. *Id.* at ¶ 24.[3]

On July 13, 2023, Schorr found Doe responsible for sexual assault and abuse, and along

with Katz, expelled him, effective immediately. *Id.* at ¶¶ 26-33. In addition to the expulsion,

Doe's transcript was marked to reflect the disciplinary action. *Id.* at ¶¶35-36.

Doe filed a timely appeal that included new evidence and a report by a forensic

psychologist. *Id.* at ¶¶ 34, 128, 135. On August 11, 2023, Staff Chair of the Appeals Committee,

Defendant Justin Schwendeman-Curtis, denied the appeal and rejected the report submitted by

Doe's expert as "based on speculation" and not "sufficiently relevant to the final determination."

*Id.* at ¶¶ 35, 51, 129-135. This lawsuit followed on July 30, 2024. ECF 1.

## STANDARD OF REVIEW

I.    **Fed. R. Civ. P. 12(b)(1)**

Dismissal under Rule 12(b)(1) is not a judgment on the merits, but instead is a

determination that the court lacks authority to adjudicate the matter. *Castaneda v. INS*, 23 F.3d

1576, 1580 (10th Cir. 1994). A court "must dismiss the cause at any stage of the proceeding in

---

[3] Doe's Complaint seeks to have this Court relitigate the credibility of the complainant child and
his mother, and the quality of the evidence Doe was allowed to elicit or that was presented
against him at the hearing. He devotes a substantial portion of his claims to rehashing the issue of
whether the alleged incident of sexual contact occurred or whether Doe was involved or present
at all. ECF 22, ¶¶ 3, 6, 19-33, 74-79, 97-100, 106, 118, 121-22, 125-26, 130-324. Doe also
focuses on the significance of the fact that the law enforcement investigation did not result of
criminal charges. *Id.* at ¶¶ 6, 81-96,101-104, 107-110, 112, 116, 135. Doe further speculates
about the complaining child's or other witnesses' state of mind and motivations. *Id.* at ¶¶ 22, 77
78-79, 122. However, these allegations are not relevant to the legal claims before this Court and
should be disregarded. This Court is not tasked with reviewing the facts surrounding the incident
but must determine only whether Doe was afforded due process and whether the proceedings
were influenced by gender bias.

which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495

F.2d 906, 909 (10th Cir. 1974). Rule 12(b)(1) motions generally take one of two forms: (1) a

facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or

(2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v.

McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted). The former is "determined

from the allegations of fact in the complaint, without regard to mere conclusory allegations of

jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). In the latter, a court need

not presume the truthfulness of the allegations but rather may consider affidavits, hearing

testimony, and other materials, *see Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th

Cir. 2001), and doing so does not convert a motion to dismiss to one for summary judgment. *See

Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Wheeler v. Hurdman*, 825 F.2d

257, 259 n.5 (10th Cir. 1987)). Doe bears the burden of establishing subject matter jurisdiction.

*Basso*, 495 F.2d at 909.

## II.      Fed. R. Civ. P. 12(b)(6)

Pursuant to Rule12(b)(6), a court may dismiss a complaint for failure to state a claim

upon which relief can be granted. A plaintiff's factual allegations need not be detailed, but they

must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a party's allegations must

"plausibly" support a legal claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The

plausibility standard requires more than a mere possibility that a defendant has acted unlawfully,

and dismissal is proper "where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct." *Id.* Courts need not accept as true legal conclusions couched

as factual allegations. *Id.* Rather, courts "must determine whether the complaint sufficiently

alleges facts supporting all the elements necessary to establish an entitlement to relief under the

legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ARGUMENT

**I.    Doe's § 1983 claim (Count III) stated against the University and the Board is barred
       by the Eleventh Amendment.[4]**

The Eleventh Amendment prohibits federal courts from entertaining suits brought by a

citizen against his own state. U.S. Const., Amend. XI; *see also Pennhurst State Sch. & Hosp. v.

Halderman*, 465 U.S. 89, 98 (1984). The Eleventh Amendment bars suits against the state, as

well as arms of the state, unless Congress either validly abrogated the state's immunity or the

state waived its immunity. *Jemaneh v. Univ. of Wyo.*, 82 F. Supp. 3d 1281, 1302-03 (D. Colo.

---

[4] In Count I, Plaintiff seeks declaratory judgment "against all Defendants" for violating his due
process rights under the United States Constitution. ECF 22, ¶¶ 137-49. For the reasons stated in
Sections III.A-C below, Plaintiff fails to state a claim for a violation of his due process rights,
therefore, Count I should be dismissed. To the extent Plaintiff asserts a claim for declaratory
relief against any individual Defendant, it should also be dismissed as duplicative of the § 1983
claims in Count III, which is the proper mechanism for raising such claims against individual
defendants. *See Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*,
255 F. Supp. 3d 1064, 1080 (D. Colo. 2017). Further, Count II of the Complaint, *see* ECF 22 at
¶¶ 150-60, fails to state a claim for violation of due process because there is no express or
implied private right of action arising directly from the Colorado Constitution and within the
university disciplinary context. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 81 F. Supp. 2d
1090, 1098 (D. Colo. 2000) (citing *Vanderhurst v. Colorado Mountain Coll. Dist.*, 16 F. Supp.
2d 1297, 1304 (D. Colo. 1998)). Moreover, where adequate remedies are available through other
causes of action – such as § 1983 or breach of contract – courts will decline to recognize an
implied state constitutional cause of action. *Id.* Thus, Count II should also be dismissed against
all Defendants. And like Count I, Count II should also be dismissed for failing to state a claim as
outlined in Sections III.A-C.

2015). This prohibition extends to suits against state entities for injunctive relief. *Cory v. White,*
457 U.S. 85, 90-91 (1982).

"The Tenth Circuit has 'consistently held' that state colleges and universities—as well as
their governing boards of regents—are arms of the state and therefore enjoy Eleventh
Amendment immunity." *Englehart v. Bd. of Regents for the Okla. Agric. & Mech. Colls.,* No. 15-
cv-138-JED-PJC, 2016 WL 3645193, at *3 (N.D. Okla. June 30, 2016) (collecting cases); *see
also Neal v. Colo. State Univ.-Pueblo,* No. 16-cv-873-RM-CBS, 2017 WL 633045, at *18 (D.
Colo. Feb. 16, 2017) (citing *U.S. ex rel. Ruotsinoja v. Bd. of Governors of the Colo State Univ.
Sys.,* 43 F.Supp.3d 1190, 1193 (D. Colo. 2014)).

The immunity of the state for claims brought under § 1983 has been neither abrogated by
Congress nor waived by the states. *See, e.g., Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66
(1989) (finding no Congressional abrogation of immunity); *Robinson,* 390 F. Supp. 2d at 1016
(finding no waiver). As such, CSU and the Board of Directors are entitled to Eleventh
Amendment immunity from Plaintiff's claims for money damages stated pursuant to § 1983.
They are also entitled to dismissal of the § 1983 claim because neither are "persons" who may be
sued under that statute. *Will*, 491 U.S. at 65-66.

## II.    Doe's § 1983 Claim stated against the individual Defendants in their official capacities should be dismissed.

### A.    All but one of the Defendants sued by Doe in their official capacities should be dismissed because they do not possess the requisite authority to carry out the relief Doe seeks.

"An action against a person in [their] official capacity is, in reality, an action against the
government entity for whom the person works." *Pietrowski v. Town of Dibble,* 134 F.3d 1006,
1009 (10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Official

capacity suits are permitted only where they "seek[] to enjoin alleged ongoing violations of federal law." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (internal citation omitted). And only officials with authority to grant the requested relief should be named as parties for this claim. *See Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1082–83 (D. Colo. 2017) (citing *Kitchen v. Herbert*, 755 F.3d 1193, 1201–02 (10th Cir. 2014) and). Here, all but one of the Defendants named in their official capacity under Count III lack authority to provide the requested relief.

To the extent Doe's § 1983 claim seeking injunctive relief survives this motion, Defendant Katz, Director of the SRC, is the appropriate CSU employee to be named in their official capacity. The office Katz oversees is responsible for issuing sanctions under the Code and initiating disciplinary notations on transcripts, so he is the proper party to implement the injunctive relief Doe seeks. The Court should dismiss the redundant claims against Defendants Frank, Parsons, Hughes, Chesson, Muniz, Exline, Schorr, and Schwendeman-Curtis, because they are not the appropriate officials with authority to grant the requested injunctive relief. *See Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1087 (D. Colo. 2010).[5]

**B.     Doe fails to state an official capacity claim under § 1983.**

To prevail on an official capacity claim, plaintiffs must make the same showing required of individual capacity claims, plus they must show that the government official acted pursuant to

---

[5]As noted by Plaintiff's counsel, undersigned counsel conferred with him about the official capacity claims and requested that Doe voluntarily dismiss all but the individual having authority to affect the relief requested. ECF 22, ¶ 162, fn5. Undersigned counsel offered to provide Plaintiff the name of the CSU official with authority to grant the requested relief. However, Plaintiff's counsel demurred at this suggestion, stating instead his intention to keep all the named Defendants in the case for now.

state policy or custom. *See Graham*, 473 U.S. at 166; *see infra* Sections III.A-C (outlining

standard for individual capacity claims). The additional requirement exists to ensure that the

government – the "real party in interest" – is only held liable when its policies caused the

constitutional injury. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Other than complaining generally that the procedures applied in Title IX misconduct

proceedings are superior to those utilized for Student Conduct Code violations, Doe fails to

identify any specific policy or custom at CSU that resulted in his injuries. Further, as outlined in

Sections III.A-C below, Doe cannot demonstrate that any Defendant, including Katz, violated

Doe's clearly established rights. As such, Doe is unable to state an official capacity claim against

Katz, and it should be dismissed.

**III.    Doe fails to state a plausible claim against any of the individual Defendants for a
violation of his due process rights under § 1983.**

**A.    Doe received due process throughout the disciplinary proceeding.**

In the student disciplinary context, procedural due process requires notice and an

opportunity to be heard. *Goss v. Lopez,* 419 U.S. 565, 579 (1975). When, as here, Doe was

afforded a pre-suspension hearing, something less than a full evidentiary hearing is sufficient.

*See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545 (1985). Due process requires that

the student be given (1) oral or written notice of the charges against him, including an

explanation of the basis for the accusation, and (2) an opportunity to present his side of the story.

*Goss,* 419 U.S. at 581. Here, CSU's policies governing disciplinary proceedings provided an

adequate mechanism for Doe to challenge CSU's attempt to impose disciplinary action.

At the outset, Doe admits he received notice of the investigation by CSU, which

described the alleged violations and underlying circumstances giving rise to the investigation.

*See, e.g.,* ECF 22, ¶¶ 5, 113. He cannot identify any legal authority that suggests his right to notice also entitled him to access the complete investigative file, the investigator's contemporaneous interview notes, or anything further to explain the "nature" of the accusations. *Id.* at ¶¶ 145.a-c. Doe also received the investigator's 55-page investigation report (along with 32 pages of supporting documents). *Id.* at ¶¶ 15, 123. He cannot demonstrate a clearly established Fourteenth Amendment right to notice that included anything beyond this substantial collection of relevant materials.

CSU also provided Doe ample opportunities to present his version of events. Doe admits he provided a statement to CSU, in the form of his prior statement to law enforcement, regarding the misconduct allegations. *Id.* at ¶ 12. Prior to his hearing, scheduled nearly one year after he was first notified of the investigation, Doe was granted three additional weeks to review the investigation report and prepare his response. *Id.* at ¶¶ 17-18, 124. The fact that Doe's alleged expert witness on forensic investigatory techniques was unavailable to testify on the new date set by the SRC does not demonstrate that he was denied due process. There is no entitlement to a student disciplinary hearing that accommodates every request or demand made by the Respondent, including the ability to present expert testimony.

Doe was permitted to submit questions to ask witnesses in advance of the hearing. *Id.* at ¶ 20. He had the assistance of an advisor/attorney of his choice throughout the process. *Id.*; *see also id.* at ¶¶ 113, 120. And he availed himself of the opportunity to appeal, again asserting his belief that CSU should consider the testimony of his expert witness on child forensic interviews, who supplied a report post-hearing. Id. at ¶ 34. Doe cannot demonstrate that he had a clearly established Fourteenth Amendment right to procedural mechanisms beyond what he received

from CSU throughout the process. *See Ward v. Anderson,* 494 F.3d 929, 937 (10th Cir. 2007) (owners of childcare facility received sufficient process during and after investigation where they acknowledged their complaints were heard by several department employees).

**B.      Doe is not entitled to the additional procedural protections detailed in the Complaint.**

Having failed to identify constitutional deficiencies in the notice and opportunity to be heard afforded by CSU, Doe instead identifies several alleged deficiencies in the way the investigation and hearing were conducted and the level of participation he was provided. *See, e.g., id.* at ¶¶ 145.a-m. However, none of these factual allegations – even if accepted as true – rise to the level of violating a clearly established right.

Throughout his 63-page Complaint, Doe repeatedly suggests that he was subjected to a biased and flawed investigation and a decision-making process that was influenced by his gender and/or his status as a respondent accused of sexual misconduct. *See, e.g., id.* at ¶¶ 144.m. Yet, "a substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that a hearing is unfair." *Corstvet v. Boger*, 757 F.2d 223, 229 (10th Cir. 1985); *see also Withrow v. Larkin,* 421 U.S. 35, 47 (1975) (actual bias likely where decisionmaker has a pecuniary interest in the outcome or had been target of personal abuse or criticism from party before them). Here, Doe offers nothing more than conclusory allegations of bias.

Doe's allegations that the Defendants assessed witness credibility without any justification are supported only by Doe's perceptions of the testimony. *Id.* at ¶¶ 145.g-h, 145.j-l, 145.m.iii, 145.m.v, 145.m.viii-xiiii. The fact that the decisionmakers did not reach the same conclusions as Doe regarding the credibility of witnesses or the weight to be accorded to testimony falls short of supporting a claim of violation of the Fourteenth Amendment. Doe

alleges, for example, that CSU violated his due process rights by utilizing a preponderance of the evidence standard. *See* ECF 145.e. However, due process standards "permit[] state educational institutions to adjudicate disciplinary proceedings relating to sexual misconduct using a preponderance of the evidence standard." *Misseri v. DiStefano*, 480 F.Supp.3d 1157, 1168 (D. Colo. 2020).

Doe also alleges that CSU violated his due process rights by "limiting cross examination" of witnesses. ECF 22 at ¶ 145.g. However, "[s]tudents accused of violating university policy do not have an unfettered due process right to cross-examination in all disciplinary proceedings." *Lee v. Univ. of New Mexico*, 500 F.Supp.3d 1181, 1240 (D.N.M. 2020). While the general right to cross-examine witnesses within the context of a student disciplinary hearing may be in dispute among the courts, *compare Misseri v. DiStefano*, 480 F.Supp.3d 1157, 1164-66 (D. Colo. 2020) (collecting cases recognizing right to some form of cross-examination in student discipline context), *with Lee*, 500 F.Supp.3d at 1240-41 (D.N.M. 2020) (collecting cases holding students accused of violating university policy do not have right to cross-examination), Doe has not alleged any facts explaining how the denial of the written cross-examination questions submitted *by him* deprived him of due process. And Doe admits he was not denied cross-examination altogether – rather, the hearing officer declined to ask the witnesses all the questions he submitted – which would be no different had the hearing officer sustained any objections to the questions or otherwise denied questions posed by Doe himself during the hearing.

To the extent that Doe alleges that CSU failed to abide by its own policies and procedures in conducting his disciplinary proceedings, *see, e.g.,* ECF 22, ¶¶ 69-72, 199, such a failure does not, by itself, give rise to a constitutional claim. *Brown v. Univ. of Kansas*, 16 F. Supp. 3d 1275,

1290 (D. Kan. 2014), *aff'd*, 599 F. App'x 833 (10th Cir. 2015); *see also Hennigh v. City of Shawnee,* 155 F.3d 1249, 1256 (10th Cir. 1998) ("[A] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause."). Moreover, Doe fails to identify which policies and procedures were violated *and* the link between those failures and clearly established law defining the contours of Fourteenth Amendment protections within the context of student disciplinary proceedings.

When examined under the standards set forth in *Goss* and *Loudermill,* the due process accorded to Doe meets constitutional standards. *Doe v. Univ. of Colorado*, 255 F. Supp. 3d at 1084 (due process does not require a trial-type hearing in every conceivable case of government impairment of private interest) (internal quotation omitted). The due process clause does not guarantee that the individual Defendants would reach a result with which Doe agreed – as in, deciding to forego an investigation altogether; declining to forward the complaint to the SRC for hearing based on the investigation's findings; determining Doe had not violated the sexual misconduct policy; or imposing a sanction less than expulsion. Under these facts, Doe has failed to state a plausible claim for denial of his Fourteenth Amendment right to due process.

### C. Doe fails to plead personal participation by all Defendants in the conduct that allegedly violated his due process rights.

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). If a defendant is sued in their individual capacity, the complaint must allege facts which, if proven, would show that the defendant personally participated in the alleged violation. Otherwise, the complaint fails to state a claim upon which

relief can be granted under § 1983. *Id.*; *see also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).

Here, reference to Defendants Frank, Parsons, Hughes, and Chesson appears only in the "Parties" section of the Complaint. *See* ECF 22 at ¶¶ 43-46. The only additional allegation about Defendant Muniz is that she directed a Title IX investigation be opened and notified Doe in writing of the same. *Id.* at ¶¶ 47, 80, 113. And regarding Defendant Katz, the Complaint states only that he was involved in correspondence between CSU and Doe about the proceedings, and in effecting the sanction imposed by hearing officer Schorr. *Id.* at ¶¶ 67, 123-24, 127.

As to each of these Defendants, the remaining allegations in the Complaint fail to "make clear exactly *who* is alleged to have done *what* to *whom*, and, to provide each individual with fair notice as to the basis of the claims against" them. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis original) (dismissing § 1983 claim because complaint failed to isolate allegedly unconstitutional acts of each defendant). Similarly, Doe's assertions that some of these Defendants had supervisory authority over other Defendants, *see* ECF 22 at ¶¶ 44-45, will not sustain a § 1983 claim. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Because the Complaint lacks sufficient allegations of their personal involvement in the underlying circumstances, Doe's § 1983 claim against Defendants Frank, Parsons, Hughes, Chesson, Muniz, and Katz should be dismissed. *Santistevan v. Stegink*, No. 15-CV-00198-RM-KMT, 2016 WL 1388018, at *1 (D. Colo. Apr. 8, 2016).

## IV.    The individual Defendants are entitled to qualified immunity for Doe's § 1983 claim.

As state officials performing discretionary functions, the individual Defendants are each entitled to qualified immunity for alleged violations of the Fourteenth Amendment. Qualified

immunity "protects all but the plainly incompetent or those who knowingly violate the law." *See Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (internal citation omitted). If there has been any violation of Doe's Fourteenth Amendment or other federally protected rights, the individual Defendants are entitled to qualified immunity because he cannot show the contours of any right on which he relies were clearly established during the period in question, such that each Defendant should have known that his or her conduct was violating that right. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

A constitutional right is "clearly established" if the "contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. For a plaintiff to demonstrate that a law was clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the Doe maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

Once the defendant raises a qualified immunity defense, the plaintiff bears a heavy two-part burden to establish that the defendant's conduct violated a constitutional or statutory right; and that the right was clearly established at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223 (2009) (overruled *Saucier* to the extent it mandated trial court must rule on first prong before reaching second prong of qualified immunity test). If no constitutional right would have been violated were the allegations established, the analysis ends there. *Id.* If the law supporting the allegedly violated rights was not clearly established, then the defendant is immune from liability. *Id.*

The fact the investigation was not conducted as Doe would have liked, or failed to produce an outcome in his favor, does not establish unlawful conduct under the federal constitution. A hearing need not necessarily provide all, or even most, of the protections afforded by a trial. *See Camuglia v. The City of Albuquerque,* 448 F.3d 1214, 1220 (10th Cir. 2006). The Defendants' actions were objectively reasonable when viewed in the context of the situation – the safety and welfare of the school community in regulating student conduct. *See Butler v. Rio Rancho Pub. Sch. Bd.*, 341 F.3d 1197, 1201 (10th Cir. 2003) (concluding that there is "no doubt" the school has a "legitimate interest in providing a safe environment for students and staff"). For this reason, and as outlined below, the individual Defendants are entitled to qualified immunity.

**A.    Doe fails to allege plausible claims that the individual Defendants violated his federal constitutional rights.**

For the reasons set forth above in Sections III.A-C, Doe fails to state any plausible claims for violation of his due process rights under the Fourteenth Amendment and, therefore, is unable to satisfy the first prong of the qualified immunity test.

**B.    Doe cannot point to any clearly established law in support of his constitutional claims.**

The existence of a general constitutional right is not enough to demonstrate a law is clearly established. *See Wilson v. Layne*, 526 U.S. 603, 614-15 (1999). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (internal citation omitted).

Here, Plaintiff must demonstrate that the U.S. Supreme Court, the Tenth Circuit, or a collection of circuit courts, has held that student disciplinary proceedings require universities to

provide the type of heightened due process procedures contemplated by Doe in paragraphs 145.a-m of the Complaint, such as a Fourteenth Amendment right to (1) procedural protections consistent with those available in criminal proceedings, including access to an entire investigative file or privileged materials collected by law enforcement; (2) a university official must allow all cross-examination questions submitted by the student; (3) must accommodate a student's desire to present expert testimony; (4) a university official violates the due process rights of a student by evaluating or weighing the evidence presented or assessing the credibility of the witnesses in a manner with which the accused student disagrees; or (5) that a university employee violates an accused student's due process rights by making a sexual misconduct responsibility determination in a manner with which the accused student disagrees. Absent such binding precedent, the individual Defendants are entitled to qualified immunity from liability for Doe's federal damages claims.

**V.     Doe fails to state a claim for gender discrimination against CSU under Title IX.**

Doe asserts Title IX claims against CSU for selective enforcement/erroneous outcome and deliberate indifference. ECF 22, ¶¶ 194-97, 198-200. Although difficult to differentiate, Doe fails to plead sufficient facts to support a basis for liability on either theory.

Under Title IX, "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[6] Title IX "bars the imposition of university discipline where [sex] is a motivating factor in the decision to discipline." *Doe v. University of Denver*, 1 F.4th 822, 829 (10th Cir. 2021) (quoting *Yusuf v.*

---

[6] CSU does not dispute that it receives federal funds.

*Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). A school may also be liable for its own conduct

in being deliberately indifferent to sexual harassment. *See Rost ex rel. K.C. v. Steamboat Springs*

*RE-2 School District*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Davis v. Monroe County Bd.*

*of Educ.*, 526 U.S. 629, 643 (1999)).

Here, Doe's claims are conclusory and based on speculation about CSU's differential

treatment of male and female respondents accused of sexual abuse of a minor. As outlined

below, Doe's Title IX claim should be dismissed because the Complaint lacks sufficient factual

support for the assertion that gender was a motivating factor in CSU's student conduct

determination, or that CSU was deliberately indifferent to allegations of sexual harassment.

> **A.    Doe's selective enforcement/erroneous outcome claim should be dismissed because the Complaint lacks particularized facts to suggest that Doe's gender was a motivating factor in CSU's disciplinary process.**

In the context of student conduct proceedings, there are two basic theories of Title IX

liability: erroneous outcome and selective enforcement. *See Doe*, F.4th at 829 (describing cases

adopting erroneous outcome and selective enforcement theories of Title IX liability). While

recognizing that evidence of erroneous outcome or selective enforcement "are means by which a

plaintiff might show that sex was a motivating factor," the Tenth Circuit has declined to adopt

strict adherence to either theory of wrongdoing. *Id.* at 829-30. Rather, the Tenth Circuit believes

the better approach to analyzing Title IX claims is to "ask the question more directly: do the facts

alleged, if true, raise a plausible inference that the university discriminated against [the student]

'on the basis of sex'?" *Id.* at 830 (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 667-68 (7th Cir.

2019)).[7] To satisfy Title IX under a selective enforcement or erroneous outcome theory, "generalized evidence" of gender bias is insufficient. *Id.* at 831 (citing *Doe v. University of Denver*, 952 F.3d 1182, 1192-93 (10th Cir. 2020) (*Doe I*)). This means that Doe's claims must include a "particularized something more … that would indicate that [CSU's] decision in [Doe's] particular case was based on his gender." *Doe I*, 952 F.3d at 1192-93.

In *Doe v. University of Denver*, the Tenth Circuit held the male plaintiff's allegations of "procedural deficiencies in his sexual-assault investigation, combined with additional statistical evidence of sex bias" were sufficient to raise an inference that the university's disciplinary decision was based on plaintiff's gender. 1 F.4th at 831. The plaintiff in *Doe*, "point[ed] to a number of [] statistical anomalies that raise at least a fair inference of anti-male bias." *Id.* at 835 (discussing discrepancies highlighted by plaintiff between frequency of investigations stemming from sexual misconduct complaints brought by females versus those brought by males). Here, Doe fails to allege particularized facts – regarding his own student conduct case or that of other similar cases – to suggest his gender was a motivating factor in CSU's decision to investigate or discipline him for sexual misconduct. *Cf. Purdue*, 928 F.3d at 669-70 (describing specific allegations of gender bias outlined in complaint).

Instead, Doe alleges that CSU "had a motive to discriminate on the basis of sex due to public pressure to favor accusing parties … to demonstrate its commitment to responding to allegations of sexual misconduct against male students …." ECF, ¶ 196. In support of this contention, Doe cites an article from the website of CSU's health network. *Id.* at ¶196, n.6. The

---

[7] Although the court in *Doe* reframed the question for summary judgment, the *Purdue* case it relied upon was articulating the motion to dismiss standard. *Doe,* F.4th at 830.

contents of the article do not demonstrate gender bias. If anything, the author possibly harbors an

"anti-respondent" or "pro-complainant" bias, which is not the same thing as the type of "anti-

male" bias required for Doe's Title IX claim. *See Doe I*, 952 F.3d at 1196 ("[E]vidence of a

school's anti-respondent bias does not create a reasonable inference [of sex-based bias] …

because both males and females can be respondents."). More importantly, even assuming the

contents of the article demonstrate gender bias, Doe fails to specify any connection between the

article, or CSU's health network, and *his* conduct proceedings. He does not present evidence, for

example, that any individual Defendant was aware of the article, endorsed its viewpoint, or felt

pressure to reach a particular outcome in Doe's case because of it.

Doe further alleges sex-based bias because CSU "chose to believe the Complainant …

because [he] was a young male and chose to disbelieve … [Doe] because he is a man." ECF 22,

¶ 196. This allegation is logically inconsistent with gender bias: choosing to believe a male

complainant over the male respondent does not demonstrate *sex-based* bias. At best, it

demonstrates victim-bias, or bias in favor a child witness, which is not actionable under Title IX.

As evidence for the assertion that CSU engages in selective enforcement, Doe baldly

asserts that "as compared to female students accused of sexual misconduct," male students are

found responsible for policy violations more often, and "compared to females found responsible

for the same violations of CSU's sexual misconduct policy," CSU imposes more severe

sanctions on male students. ECF 22, ¶ 203. Yet, Doe fails to cite any examples or statistics to

support his claims of sex-based discrimination.[8] Doe's conclusory allegation that CSU has

---

[8] Plaintiff makes no effort to marshal statistical evidence of disciplinary actions initiated by CSU, instead relying on "information and belief" to support his claim of gender bias. ECF 22, ¶¶ 203-

"engaged in a pattern of building cases against innocent men" is similarly baseless. *Id.* at ¶ 204.

Doe does not offer a single example of such a pattern. Desiring to be viewed as "taking sexual

assault victims seriously" is not evidence of bias, to say nothing of the anti-male bias Doe

asserts. *Id*. Such allegations are merely conclusory.

Doe also asserts that female students are treated differently "in child sexual assault

claims." *Id.* at ¶ 206. Again, Doe fails to identify examples or statistics to support this

contention, instead reiterating the various procedural flaws that he believes support his due

process claim. *Id.*; *see also id.* at ¶¶ 207.a-e. Doe asserts that Defendants employ a "trauma-

informed" investigation model that "perpetuate[s] the idea" that complainants should be believed

and leads investigators to "appl[y] different standards of credibility" to complainants and other

witnesses. *Id.* at 208.a-b. Once again, these allegations are conclusory and, at most, would

suggest anti-respondent bias – not anti-male bias.

Finally, Doe alludes to "external pressure from the United States Department of

Education" for the contention that CSU "mishandle[ed] Complainant's" allegations. *Id.* at ¶ 211.

Doe does not explain when or in what form such pressure occurred, nor does he connect such

---

204. Instead, he makes an unsubstantiated claim that this "information is exclusively within
CSU's possession, custody and control and is not publicly reported ... [and he] needs discovery
in order to assess this claim." *Id.* at fn.5 and fn. 6. Doe's unsupported representation does not
excuse him from satisfying the plausibility standard. Nor should it allow him to proceed on
underdeveloped and uninvestigated theories of Title IX liability by suggesting he can
substantiate them with discovery after-the-fact. *See Iqbal,* 556 U.S. at 678-79 (a plaintiff armed
with nothing more than conclusions will not unlock the doors of discovery); *see also Doe v.
Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064,
1076–77 (D. Colo. 2017) ("The Court disagrees with cases that continue to accept conclusory
allegations of gender bias. *Twombly* and *Iqbal* plainly disallow such acceptance. For similar
reasons, the Court disagrees with cases that accept allegations of gender bias purely 'on
information and belief,' with no explanation of the information leading to that belief.").

pressure to allegations of child sexual assault like those involved here. This theory of Title IX liability has been rejected by the Tenth Circuit, among others: "[E]xternal pressure alone is not enough to state a claim that the university acted with bias in [a] particular case. Rather, it provides a backdrop that, when combined with other circumstantial evidence of bias in [Doe's] specific proceeding, gives rise to a plausible claim." *Doe*, 1 F.4th at 831 (quoting *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018)).

Although Doe devotes great attention to the "procedural flaws" that he believes occurred during his student conduct process, the Complaint lacks any "additional evidence" to suggest that CSU discriminated against Doe based on his gender. Because such evidence is required to sustain a Title IX claim, Count IV of Doe's Complaint should be dismissed.

### B.    Doe fails to allege a deliberate indifference claim.

Doe's deliberate indifference claim does not fit the facts alleged in the Complaint. Under a deliberate indifference theory of Title IX liability, Doe must show that CSU "(1) [had] actual knowledge of, and (2) [was] deliberately indifferent to, (3) harassment that [was] so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." *Rost ex rel. K.C. v. Steamboat Springs RE-2 School District*, 511 F.3d 1114, 1119 (10th Cir. 2008).

Doe's Title IX claim is oriented toward the selective enforcement/erroneous outcome theory addressed above; however, at paragraphs 198- 200 of the Complaint, Doe asserts that CSU was "deliberately indifferent to the falsity of the accusations of sexual misconduct" against him and that CSU's "failure to comply with its own grievance policies or … [the] Title IX regulations" indicates deliberate indifference. Such allegations do not advance a deliberate

indifference claim under a gender bias theory and pursuant to Title IX. *See, e.g., Oirya v. Brigham Young Univ.*, 854 F. App'x 968, 9701(10th Cir. 2021) (defendant's assertion university ignored his allegations that his accuser lied, without more, does not suggest deliberate indifference). Further, Doe's deliberate indifference theory fails because he does not allege that he was subjected to any form of sexual harassment (element three), let alone that any CSU official had actual knowledge of such misconduct (element one). Consequently, Doe fails to state a claim against CSU for deliberate indifference.

## VI.    Doe's breach of contract and quasi-contract claims could lie in tort and are therefore barred by the Colorado Governmental Immunity Act ("CGIA").

Doe's Fifth and Sixth claims for relief allege that CSU breached "express and implied" contracts with its student, Doe, that were created by Defendants when Doe "accepted an offer of admission to CSU and paid tuition and fees ...." ECF 22, ¶¶ 218-224. He further states that CSU "published policies and procedures applicable to [Doe] and other students attending CSU and made a warranty that it would follow those policies and procedures." *Id*. Doe avers that Defendants breached these policies throughout the disciplinary process by conducting a flawed and unlawful investigation informed by gender discrimination, denying him procedural protections during the hearing, and reaching a determination not supported by the evidence. *Id.* at ¶¶ 224.a-i. The outcome of the investigation resulted in the denial of Doe's degree for which he had earned all credits except for two required courses. *Id.* at ¶¶ 226-27.

Doe has also brought a claim for breach of the "the covenant of good faith and fair dealing," by Defendants in "making an unsupported finding of responsibility" for the alleged sexual misconduct and imposing a "disproportionately severe sanction of expulsion" that was not supported by "credible evidence." *Id.* at ¶¶ 231-32.

Both claims are barred by Colorado law. Under the CGIA:

A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section.

C.R.S. § 24-10-106(1).

As the Supreme Court has again made clear, in 2024, the form of the complaint is not determinative of the claim's basis in tort or contract. *City of Aspen v. Burlingame Ranch II Condominium Owners Ass'n, Inc.,* 551 P.3d 655, 659 (Colo. 2024) *abrogating Casey v. Colo. Higher Eu. Ins. Benefits All. Trust.,* 310 P.3d 196 (Colo. 2012), and *overruling Foster v. Bd. of Governors of the Colo. State Univ. Sys. Ex rel. Colo. State Univ.,* 342 P.3d 497 (Colo. App. 2014) (court held condominium association's two breach of contract claims stemming from alleged construction defects in housing project under city's control, could lie in tort, and were therefore barred by the CGIA); *see also Robinson,* 179 P.3d at 1007-08*; City & Cty. of Denver v. Desert Truck Sales, Inc.,* 837 P.2d 759, 764 (Colo.1992). Instead, in determining whether a claim for injury lies in tort or could lie in tort, a court must look at the essence of the injury and the nature of the relief requested. *City of Aspen,* 551 P.3d at 663; *Robinson,* 179 P.3d at 1005; *see City of Colorado Springs v. Conners,* 993 P.2d 1167, 1175–76 (Colo. App. 2019); *Adams v. City of Westminster,* 140 P.3d 8, 11 (Colo. App. 2005); *CAMAS Colo., Inc. v. Bd. of Cty. Comm'rs,* 36 P.3d 135, 138 (Colo. App. 2001). Even if such claims could arise in *tort or contract*, they're still barred because they *could lie in tort* for purposes of the CGIA. § 24-10-106(1); *City of Aspen,* 551 P.3d at 659 (court rejected economic loss doctrine as playing any role in the inquiry of whether a claim could lie in tort for purposes of the CGIA) (emphasis added).

The coverage of the CGIA is not limited to claims that may be presented directly by the claimant as tort claims, but "more broadly encompasses all claims against a public entity arising from the *breach of a general duty of care*." *Colo. Dep't of Transp. v. Brown Group Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008) (emphasis added). Whether a particular claim lies in tort or could lie in tort within the meaning of the CGIA depends upon the factual basis underlying the claim. *Id.* (citing *Robinson*, 179 P.3d at 1007-08).

According to the Complaint, the essence of the injury asserted by Doe is one caused by (1) an incompetent and incomplete investigation; (2) a procedurally flawed hearing; (3) a biased determination not supported by sufficient evidence; and (4) an arbitrary and excessive sanction. The injury alleged is consistent with a negligence theory, and therefore, Doe's claims are those that lie in tort or could lie in tort. ECF 22, ¶¶ 8,11-12, 16, 18-24, 26-27, 29-35, 37-40, 145, 147, 170, 194-200, 203, 214, 232. *See City of Aspen, supra.*

Regardless of whether Doe has presented valid contract claims, the allegations underlying the contract claims could alternatively be pleaded in tort. *See Robinson*, 179 P.3d at 1005-06 (holding that plaintiff's contractual claims, including breach of implied covenant of good faith and fair dealing, could lie in tort, and so were barred by CGIA). And because these claims could lie in tort, notwithstanding that they are pleaded as contract claims, the claims fall within the CGIA's grant of governmental immunity. C.R.S. § 24-10-106(1).

Doe alleges that because of the Defendants' misconduct, he suffered "emotional distress, economic and reputational harm, an inability to complete his studies and degree at CSU, [and] detrimental impact on his future career and higher education prospects …". ECF 22, ¶ 227. These injuries describe consequences associated with alleged tortious conduct. *Id.*

While fashioning these claims as contract claims, the allegations could support, and Doe even argues in the Complaint, that they *in fact* support claims, for gender discrimination, negligence, tortious interference, and defamation. ECF 22, ¶¶ 145, 166-169; 194-200; 224. A claim that is supported by allegations of discrimination (outside the employment context) is likely a claim that lies in tort. *See, e.g., Thomas v. Pick Hotels, Inc.,* 244 F.2d 664, 666 (10th Cir. 1955); Rest.Torts, § 866, Page 386. (a claim arising out of the common law duty of an innkeeper to provide accommodations without discrimination, clearly sounds in tort and is therefore clearly barred by the two-year statute of limitations). He also describes denial of due process harms that are associated with statutory tort liability. *See Carey v. Piphus,* 435 U.S. 247, 253 (1978) (Section 1983 creates a "species of tort liability" that provides relief to persons deprived of rights secured to them by the Constitution) (quotations omitted). Moreover, Doe essentially alleges that CSU defamed him by the accusation and ultimate finding of responsibility for sexual assault on a child, that led to his expulsion and a permanent notation of student disciplinary action on his transcript. *Id.* at ¶¶ 142, 144; *see McIntyre v. Jones*, 194 P.3d 519, 524 (Colo. App. 2008) ("A common law cause of action for defamation exists to compensate individuals who have suffered harm to their reputations due to the careless or malicious communications of others.").

Finally, the claim for breach of good faith and fair dealing cannot be "read in isolation" from the extensive tortious conduct allegations stated throughout the Complaint and relies upon the same allegations for which the breach of contract does. *See Grand Junction Peace Officers Association v. City of Grand Junction,* 24 COA 89, 2024 WL 3711062, *9, 24 COA 89 (August 8, 2024). Therefore, this claim too sounds in tort and is barred by the CGIA.

Section 24-10-106(1)(a)-(i), C.R.S., specifies the circumstances under which immunity is waived. Doe's breach of contract and breach of duty of good faith and fair dealing claims, which could also state tort claims (defamation, negligence, discrimination) against CSU do not fall within any of these waived areas of immunity, and Doe does not allege that CSU has otherwise waived its immunity. Therefore, CSU is immune from Doe's breach of contract claims.

**VII.    Doe has not stated facts to support a claim for relief under an estoppel theory.**

Doe's estoppel claim alleges that CSU's policies "constitute representations and promises that CSU should have reasonably expected to induce action or forbearance by Plaintiff." ECF 22, ¶237. Doe's estoppel claim further alleges that CSU "expected (or should have reasonably expected) Plaintiff to accept its offer of admission, to incur tuition and fee expenses based on its express and implied promises that CSU ... would not deny Plaintiff his procedural rights should he be accused of a violation of CSU's policies."[9] He further alleges that he relied on these promises to "his detriment," and therefore, "CSU is liable to Plaintiff based upon the principal of estoppel." *Id.* at ¶¶ 239-40.

Doe's claim for promissory estoppel is stated in perfunctory fashion and is not grounded in any well-identified promise within CSU's myriad policies. It should be rejected by this Court.

To recover on a promissory estoppel theory, a party must establish that (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that promise

---

[9] Here, Plaintiff also implies, for the first time at p. 53 of the Complaint, that he "suffer[ed] harassment by fellow students . . ." due to CSU's actions or omissions. Given the nature of Plaintiff's claims which lie in disciplinary action taken against Plaintiff for sexual misconduct, rather than relying on any misconduct perpetrated against him, this allegation does not appear to relate to any claim asserted by Plaintiff. ECF 22, ¶ 238.

would induce action or forebearance by the promisee; (3) the promisee in fact reasonably relied on the promise to his detriment; and (4) the promise must be enforced to prevent injustice. *See Nelson v. Elway,* 908 P.2d 102, 110 (Colo.1995).[10] The promise must be "clear and unambiguous." *Hansen v. GAB Bus. Servs., Inc.,* 876 P.2d 112, 114 (Colo.App.1994). It also must be sufficiently definite to allow a court to understand the nature of the obligation. *Soderlun v. Pub. Serv. Co.,* 944 P.2d 616, 620 (Colo.App.1997).

A claim of promissory estoppel must be predicated on a showing of a "clear and unambiguous promise." *Hansen v. GAB Bus. Servs., Inc.,* 876 P.2d 112, 114 (Colo. App. 1994). "Mere vague assurances are unenforceable." *Hoyt v. Target Stores,* 981 P.2d 188, 194 (Colo. App. 1998) (*quoting Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465 (10th Cir. 1994)). An actionable promise must be "sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Soderlun,* 944 P.2d at 620. For example, courts have rejected claims premised on assurances of fair treatment or long-term employment. *Hoyt,* 981 P.2d at 194; *Soderlun,* 944 P.2d at 621. Whether a promise is sufficiently definite to be enforced is an issue of law for the Court's determination. *Id.* at 621. Without citation to a specific provision within CSU's policies, let alone a sufficiently definite promise, Doe cannot establish a promise sufficiently clear and unambiguous enough to be enforced.

---

[10] To the extent Plaintiff intends to assert a claim under an "equitable estoppel" theory, this claim is barred by the CGIA because it is one that could lie in tort. *See Allen Homesite Grp. v. Colo. Water Quality Control Comm'n,* 19 P. 3d 32, 35 (Colo. App. 2001) (equitable estoppel claim deemed a tort claim for the purposes of the CGIA where the claim was essentially for negligent misrepresentation); *see also Desert Truck Sales, Inc.,* 837 P.2d at 764-65 (replevin claim could lie in tort).

Doe was aware that CSU had a policy setting forth certain expectations with respect to student conduct, including sexual misconduct involving third parties. Doe cannot identify a sufficiently definitive promise that within the student disciplinary context, CSU would accommodate procedural protections associated with criminal proceedings, or that its hearing officers would reach conclusions with which Doe agreed. Therefore, Doe fails to satisfy the second element of the claim since he cannot have reasonably relied, *Pinnacol Assurance v. Hoff*, 2016 CO 53, ¶ 32, upon continued enrollment in the face of serious allegations of sexual misconduct against a minor. Therefore, Doe's claim for promissory estoppel must fail.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request dismissal of the Complaint.

Respectfully submitted this 6th day of December 2024.

PHILIP J. WEISER
Attorney General

*/s/ Warren Beck*
_____

WARREN BECK*
Assistant Attorney General
AMY COLONY *
Senior Assistant Attorney General
1300 Broadway, 6th Floor
Denver, Colorado 80203
(720) 508-6143
(720) 508-6615
warren.beck@coag.gov
amy.colony@coag.gov

*Counsel of Record
  *Attorneys for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing **DEFENDANTS' MOTION TO DISMISS FIRST**

**AMENDED COMPLAINT [ECF 22]** all parties herein via ECF or by depositing copies of same

in the United States mail, first-class postage prepaid, at Denver, Colorado, this 6th day of

December 2024, addressed as follows:

Jason Savela, Esq.
The Savela Law Firm, PC
3825 Iris Ave, Suite 100
Boulder, CO 80301
jason@savelaw.net

*/s/Jen Davis-Weiser*