IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 24-cv-2076-GPG-KAS

JOHN DOE,

     Plaintiff,

v.

COLORADO STATE UNIVERSITY, THE BOARD OF GOVERNORS OF THE COLORADO
STATE UNIVERSITY;
ARAINA MUNIZ, individually and in her official capacity;
MICHAEL KATZ, individually and in his official capacity;
ERICA EXLINE, individually and in her official capacity;
DAN SCHORR, individually and in his official capacity;
JUSTIN SCHWENDEMAN-CURTIS, individually and in his official capacity,

     Defendants.

---

**ORDER**

---

     Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint

(D. 52).  The Court GRANTS the motion for the following reasons.

**I.  FACTS**

     This civil action arises from disciplinary action taken against a Colorado State University

(CSU) student following allegations that he engaged in sexual misconduct during an internship.[1]

Between March 25, 2022, and May 25, 2022, Plaintiff John Doe, a senior in CSU's undergraduate

social work program, interned as a Registered Behavior Technician at Wild Sun Behavioral

Services (Wild Sun) in Erie, Colorado (D. 46 at ¶¶ 1, 37).  On June 11, 2022, a witness reported

---

[1] The Court draws the operative facts as set forth in Plaintiff's Second Amended Complaint (D. 46).

1

to the Erie Police that her child was sexually assaulted by Plaintiff at Wild Sun (*id.* at ¶ 37). CSU's

Title IX Coordinator and Director learned of the report and directed the commencement of a formal

Title IX investigation of Plaintiff (*id.* at ¶¶ 11, 38). On July 20, 2022, Plaintiff received a Notice

of Investigation and Allegations informing him that he was being investigated for sexual

misconduct in violation of CSU's Student Conduct Code (*id.* at ¶ 70).

On May 11, 2023, the lead investigator on Plaintiff's case submitted a Student Conduct

Investigation report (SCI report) to CSU's Student Resolution Center (SRC) (*id.* at ¶ 80). The SCI

report summarized but did not include a copy of Plaintiff's video interview with the Erie Police or

the alleged victim's forensic interviews (*id.* at ¶ 92–93). On May 30, 2023, Plaintiff received a

letter listing the Student Conduct Code charges against him and notifying him that a hearing in

front of a University Hearing Officer was scheduled for June 7, 2023 (*id.* at ¶ 89). Along with the

letter, Plaintiff received a copy of the 90-page SCI report (*id.*). Plaintiff requested to reschedule

the hearing so that he could have a forensic psychologist review the SCI report and Plaintiff could

provide his own expert report (*id.* at ¶ 90). Defendants rescheduled the hearing to June 29, 2023

(*id.* at ¶ 91).

Prior to the hearing, the Hearing Officer was provided with the SCI report (*id.* at ¶ 92).

Also prior to the hearing, Plaintiff was informed that, pursuant to the Student Conduct Code,

neither he nor his advisor/attorney would be allowed to question witnesses (*id.* at ¶¶ 99–100).

Instead, he would be permitted to submit questions for witnesses in advance to be reviewed by the

Hearing Officer, and the Hearing Officer would ask the questions if they were "relevant" (*id.*).

Plaintiff submitted questions, but the Hearing Officer deemed nearly all irrelevant and did not ask

them at the hearing (*id.* at ¶¶ 100–105). At the hearing on June 29, two witnesses refused to

discuss information specific to the case, stating that it was privileged (*id.* at ¶ 108).  Two witnesses, the mother of the alleged victim and the mother's friend, did not participate in the hearing at all (*id.* ¶¶ 106–107).

On July 13, 2023, the Hearing Officer shared his findings that Plaintiff was responsible for sexual misconduct and abusive behavior and expelled Plaintiff, effective immediately (*id.* at ¶ 109).  Plaintiff submitted a Student Conduct Appeal on July 27, 2023,[2] arguing that the investigation and hearing were not conducted fairly and impartially and the decision reached was not based on substantial, sufficient information (*id.* at ¶¶ 128–130).  On August 11, 2023, the Staff Chair of the Appeal Committee issued a final decision denying Plaintiff's appeal (*id.* at ¶ 141).

In the instant action, Plaintiff argues that through the aforementioned investigation and adjudication process, Defendants failed to provide him with due process in violation of the Fourteenth Amendment (via 42 U.S.C. § 1983), discriminated against him on the basis of sex in violation of Title IX of the Education Amendments of 1972, breached the contract between Plaintiff and CSU, are liable to him based upon the principal of estoppel, and violated several provisions of the Colorado Constitution (D. 46).  The operative complaint, Plaintiff's Second Amended Complaint (D. 46), is Plaintiff's third complaint filed in this action (*see* D. 2; D. 22). The Court has previously indicated it will not grant Plaintiff another opportunity to amend his

---

[2] The complaint states Plaintiff submitted his appeal on June 27, 2023 (D. 46 at ¶ 128).  This appears to be a mistake and the Court assumes that, in accordance with the rest of Plaintiff's timeline, the appeal was submitted in July.

complaint (D. 45 at 2). Defendants now move to dismiss all claims for lack of subject matter jurisdiction and/or failure to state a claim (D. 52).

## II. LEGAL STANDARD

### A. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

### B. Qualified Immunity

Qualified immunity is immunity from suit and not a mere defense to liability. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citation omitted). Thus, at this stage of the litigation, the plaintiff must (1) allege a violation of a constitutional right and (2) the right must be clearly established at the time of the defendant's alleged misconduct. *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). "The factual allegations must be specific and non-conclusory, and sufficient for a district court to determine that those facts, if proved, demonstrate the defendant is not entitled to qualified immunity." *Currier v. Doran*, 242 F.3d 905, 912 (10th Cir. 2001) (citation and internal quotations omitted). Asserting qualified immunity via a motion to dismiss "subjects a defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). When reviewing a motion to dismiss under the lens of qualified immunity, the court should not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (citation omitted).

### III. ANALYSIS

### A. Count I: 42 U.S.C. § 1983 Against All Individual Defendants

Plaintiff argues that Defendants failed to afford him adequate procedural due process before depriving him of his constitutionally protected property interest in pursuing and continuing his education. Specifically, Plaintiff argues that he was deprived of adequate notice "when CSU's Title IX Office and Student Resolution Center refused to allow Plaintiff to review the investigative

file or any of the evidence against him during the investigation" (D. 46 at ¶ 172). Plaintiff argues

he was deprived of an adequate opportunity to be heard because:

- he was denied the ability to review the evidence against him and other materials related to

   the investigation,

- the Hearing Officer was given a summary of his recorded statement instead of the full

   statement,

- he was unable to cross-examine any witnesses,

- the Hearing Officer did not ask most of his prepared questions,

- CSU placed the burden of proof on him to prove the allegations were false,

- Defendants demonstrated bias against him because he was male,

- the Hearing Officer failed to give weight to the fact that certain interviews were

   unavailable to Plaintiff,

- the Hearing Officer refused to extend the date of the hearing to accommodate Plaintiff's

   forensic psychologist,

- his appeal was denied based on a negative inference drawn from Plaintiff's decision not

   to participate in the investigative process, and

- his appeal was denied without considering new evidence from Plaintiff's forensic

   psychologist.

(*id.* at ¶¶ 92, 176–189).

Plaintiff fails to state a claim that his constitutional rights were violated, and, to the extent

that he names Defendants in their individual capacities, they are also entitled to qualified

immunity.

### 1. *Plaintiff does not allege a violation of a constitutional right*

None of Plaintiff's alleged procedural deficiencies amount to inadequate notice and opportunity to be heard under the Fourteenth Amendment. Due process requires that students facing disciplinary action that would interfere with a protected property interest are entitled, at a minimum, to "some kind of notice" and "some kind of hearing." *Goss v. Lopez,* 419 U.S. 565, 579 (1975). "[T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Id.* (citing *Cafeteria Workers v. McElroy,* 367 U.S 886, 895 (1961). A student facing temporary suspension of 10 days or less must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. In the case of long-term suspension or expulsion, courts in the Tenth Circuit apply the balancing test described in *Matthews v. Eldrige*, 424 U.S. 319 (1976), "to determine if additional process was required." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). Under *Matthews,* a court must balance: "(1) the private interest that will be affected by the official action, (2) the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and administrative burden, that the additional or substitute procedural requirements would entail." *Id.*

Before reaching the question of whether Plaintiff was denied adequate due process, the Court notes that the complaint shows Plaintiff was indeed provided much of the process that he argues he was denied. First, as discussed in more detail below, there are no facts in the complaint indicating Plaintiff was denied any ability to review the evidence against him. He was provided with the SRI report, which was the full evidence submitted to the Hearing Officer, and he had just

shy of a full month to review the report (May 30, 2023, to June 29, 2023) before the hearing.

Second, there are no facts indicating that CSU placed the burden of proof on Plaintiff to prove that

the allegations against him were false. From what the Court can discern, Plaintiff's argument here

is based on CSU's denial of his requests for access to the full investigative file during the

investigation process (*see* D. 46 at ¶¶ 74–75) and an email from CSU noting that Plaintiff alone,

not his advisor, was responsible for presenting evidence that he wished to present during the

investigation and hearing process (*id.* at ¶ 91; D. 46-17 at 1). These facts do indicate that Plaintiff

bore a burden to collect and produce his own evidence (to conduct his own discovery, in a sense),

but they do not indicate in any way that the Hearing Officer placed a presumption of guilt on

Plaintiff at the hearing. Plaintiff's assertion to the contrary is a drastic logical leap unsupported

by the Hearing Officer's stated standard of proof and explanation of his decision (*see* D. 10).

Third, there are no facts indicating that the Appeal Committee denied Plaintiff's appeal without

considering new evidence (namely, Plaintiff's forensic psychologists' report). Rather, the letter

denying Plaintiff's appeal indicates that the Staff Chair reviewed the report and found it was

insufficiently relevant to the final determination (*see* D. 46-13 at 2). While Plaintiff may disagree

with this assessment, the Staff Chair undoubtedly did consider and address the report. Fourth,

there are no facts indicating that the Appeal Committee denied Plaintiff's appeal based upon a

negative inference drawn from his decision not to participate in the investigation process. Plaintiff

bases this argument on the Staff Chair's statement that Plaintiff had "ample opportunity" to

participate in the investigation and review the evidence against him (D. 46 at ¶ 189). Nothing

about this remark indicates a negative inference about Plaintiff's lack of participation in the

investigation. Instead, it was clearly made in direct response to Plaintiff's argument on appeal that

the hearing was conducted unfairly because he was not given an opportunity to present relevant information (*see* D. 46-13 at 1).

As for Plaintiff's argument that he was denied adequate due process, the facts in the complaint establish that Plaintiff was provided with the process required under *Goss:* He received a written notice of the charges against him (D. 46 at ¶ 89), an explanation of the evidence CSU had (the SRI report) (*id.*)*,* and an opportunity to present his side of the story (*id.* at ¶¶ 64, 86). There is no law requiring CSU to provide Plaintiff with the full investigative file in its written notice.  To the contrary, case law indicates that adequate notice requires only enough information to make a student aware of the charges against him.  *See Watson,* 242 F.3d at 1241–1242 (finding notice that failed to list charges was still sufficient because student "already knew the allegations he faced").  The notice letter CSU sent to Doe clearly lists the charges against him (D. 46-7)*.* Neither was CSU required to provide Plaintiff with the full investigative file as part of its notice of the evidence it had against him.  According to the complaint, CSU did not submit the entire investigative file to the Hearing Officer, just the SRI report (*see* D. 46 at ¶ 92).  Therefore, Plaintiff was provided with the evidence actually submitted against him.[3]  Furthermore, *Goss* merely requires that Plaintiff was provided with *an explanation* of the evidence CSU had against him.

---

[3] Doe argues that under CSU's Title IX Procedures, the University was required to provide him an opportunity to inspect and review "any evidence obtained in the investigation that is directly related to the allegations in the formal complaint, even if the University does not intend to use that evidence in reaching its determination regarding responsibility" (D. 57 at 8).  However, because the alleged misconduct occurred "at an off-campus location outside of an educational program or activity" (*id.* at ¶ 2), Title IX Procedures did not apply (*see* D. 2-4 at 3 ("These Procedures apply to conduct that occurs on university property, and to conduct that occurs off university property . . . when the conduct occurs in the context of a university employment or education program or activity")).  The complaint appears to acknowledge that CSU's Title IX Procedures did not apply to Doe's case, and his case was instead governed by the Student Code of Conduct (*see* D. 46 at ¶ 22).

419 U.S. at 571.  Here, Plaintiff was provided with the 90-page SRI report summarizing "all facts, both inculpatory and exculpatory, that ha[d] been collected" (D. 46-6 at 3).

The fact that CSU did not provide the Hearing Officer with a copy of Plaintiff's video interview and instead only provided a summary of that interview does not mean Plaintiff was not provided an opportunity to present his side of the story.  According to the Student Conduct Code and correspondence between Plaintiff and the Director of the SRC, the hearing was "a one on one conversation with a University Hearing Officer" at which Plaintiff had "an opportunity to respond to the allegations" against him and share his perspective (D. 46-16 at 2; D. 46-17 at 1; D. 46-3 at 9).  Nothing in Plaintiff's complaint suggests—and nowhere does he argue—that he was denied an opportunity to respond to allegations or share his perspective at the hearing itself.  Notably, in his appeal, Plaintiff did not mention that he was denied the opportunity to present his side of the story at the hearing, despite the appeal form asking, "[d]id you have a chance to present relevant information?" (D. 46-12 at 1).  Additionally, before the hearing, CSU provided Plaintiff with an opportunity to participate in an investigative interview with a Title IX investigator at which he would have been permitted to "provide all evidence, documents, and items" that he believed would be helpful to the interviewers (D. 46-15 at 4–5).  Plaintiff declined to participate in the interview (D. 46-14 at 2–3).

As for Plaintiff's argument that he was denied certain additional processes that he was entitled to under the *Matthews* test, the complaint lacks sufficient facts to plausibly support such a finding.  In light of the Appeal Committee's consideration of Plaintiff's expert forensic psychologist's report and finding that it was not relevant to his case, there is no support for the notion that there would have been any probable value in giving Plaintiff more time to prepare the

report for the hearing.  Neither is there factual support that there would have been probable value in permitting Plaintiff to review the full investigative file before the hearing.  As discussed above, Plaintiff was provided with all of the evidence presented to the Hearing Officer, and he does not state how or why he would have benefitted from accessing the full investigative file.  Of import, six witnesses whose statements were summarized in the SRI report appeared at the hearing, the Hearing Officer's decision was clearly based on the testimony of the witnesses at the hearing, Plaintiff was able to receive a copy of the Erie Police report independently, and Plaintiff was able to present his own statement at the hearing (*see* D. 46-11).  There are also no facts suggesting that the forensic interviews with the alleged victim should have been submitted to the Hearing Officer, most notably because CSU could not legally obtain the forensic interviews.  The alleged victim's mother refused to allow the Erie Police to provide copies of the interviews to CSU investigators (D. 46 at ¶ 56).  Finally, the Tenth Circuit has indicated that, for students facing expulsion, due process does not require confrontation of witnesses or an impartial decision-maker.  *Watson,* 242 F.3d at 1243 (rejecting student's argument that upon proposed expulsion, he was entitled to the right to cross-examine witnesses and an impartial decision-maker, stating, "precedent indicate[s] that due process does not require all of these rights.").   In any event, Plaintiff did have the opportunity to provide the Hearing Officer with questions for witnesses, which he did (D. 46 at ¶ 100).  According to the Complaint, the Hearing Officer found most of Plaintiff's questions irrelevant and did not ask them (*id.* at ¶ 105), indicating that the Hearing Officer would have afforded answers little, if any, weight had Plaintiff asked the questions.  Additionally, Plaintiff has not offered any evidence at all suggesting that anyone from CSU involved in his investigation or the hearing process was personally biased against him.  *See Tonkovich v. Kansas Bd. of Regents,*

159 F.3d 504, 518 (10th Cir. 1998) ("[A] substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that a hearing is unfair." (internal quotations omitted)).  As a result, there is no evidence that the outcome of Plaintiff's hearing would have been any different had he been afforded these processes.  *See Watson,* 242 F.3d at 1242 ("In order to establish a denial of due process, a student must show substantial prejudice from the allegedly inadequate procedure.").

### 2. Plaintiff's asserted constitutional rights were not clearly established

Even if Plaintiff had stated a claim that he was entitled to additional processes, his alleged rights were not clearly established at the time of the investigation and hearing.  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton,* 438 U.S. 635, 640 (1987)).  A plaintiff may show that a law was clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision" or by showing that "the clearly established weight of authority from other courts" found the law to be as the plaintiff maintains.  *Cox v. Glanz,* 800 F.3d 1231, 1247 (10th Cir. 2015) (quotations omitted).  While "[t]he qualified immunity doctrine does not require a case exactly on point," it does require that "in the light of pre-existing law the unlawfulness must be apparent."  *Weise v. Casper,* 593 F.3d 1163, 1167 (10th Cir. 2010) (internal citations and quotations omitted).

Plaintiff cites *Brown v. University of Kansas,* 599 F. App'x 833 (10th Cir. 2015), and *Harris v. Blake,* 798 F.2d 419 (10th Cir. 1986), for the proposition that he had "a clearly established right to 'greater procedural safeguards' because the university was considering action that was

disciplinary rather than academic" (D. 57 at 15). However, Plaintiff does not identify any Tenth Circuit or Supreme Court case law supporting that there was a clearly established right to present his own expert report, review the full investigative file, or cross-examine witnesses. As already mentioned, the Tenth Circuit in *Watson* rejected the argument that a student facing expulsion is entitled to cross-examine witnesses. *See* 242 F.3d at 1243; *see also Jordan v. Steward,* No. 1:19-CV-02660-RM-SKC, 2023 WL 6466516, at *4 (D. Colo. Sept. 12, 2023), *report and recommendation adopted,* No. 19-CV-02660-RM-SKC, 2023 WL 6464916 (D. Colo. Oct. 4, 2023) (reviewing District of Colorado cases and concluding that they do not clearly establish a right to cross-examine witnesses). The Court in *Watson* also rejected the argument that students facing expulsion are entitled to "the presentation of evidence," indicating Plaintiff did not have a clear right to present his forensic psychologist's report.

Because Plaintiff fails to state a claim and Defendants are entitled to qualified immunity, Plaintiff's claim is dismissed as to all defendants, whether named in their official or individual capacities.

### B. Count II: Title IX of the Education Amendments of 1972

Plaintiff argues that he was not treated equitably throughout the investigation and hearing process "because he is a male" (D. 46 at ¶ 217). However, Plaintiff offers zero evidence—aside from the fact that he is a male—to support this claim. "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). "Generally, to succeed on a claim under Title IX, 'a plaintiff must show: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion

from the program was on the basis of [gender].'" *Doe v. Univ. of Denver*, 952 F.3d 1182, 1190 (10th Cir. 2020) (quoting *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996)).

None of Plaintiff's proffered evidence indicates that CSU generally discriminates in Title IX proceedings on the basis of gender. Plaintiff states that the number of male students found responsible for policy violations at CSU is far greater than the number of females, the sanctions are more severe for male students, and sexual misconduct case involving female students are not referred to law enforcement (*id.* at ¶¶ 224–225). But Plaintiff offers nothing to show that these statements are true. Instead, he argues that the information needed to substantiate his claims "is exclusively within CSU's possession, custody and control and is not publicly reported" (*id.* at ¶¶ 224–225 n.8, n.9). He goes on, "[a]ccordingly, Plaintiff needs to obtain discovery in order to assess this claim" (*id.*). On a motion to dismiss, the Court is required to accept as true all factual allegations in the complaint; however, the Court will not accept conclusory allegations of gender bias based "purely 'on information and belief,' with no explanation of information leading to that belief." *See Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado,* 255 F. Supp. 3d 1064, 1076 (D. Colo. 2017). The Court previously notified Plaintiff that it had concerns as to the sufficiency of his "repeated 'upon information and belief' manner of pleading" and referred Plaintiff to the *Doe v. University of Colorado, Boulder* case (D. 45 at 5 n.3, 9). It appears that Plaintiff failed to substantiate his Title IX claim despite the Court's instruction. Furthermore, Plaintiff took no position (D. 37 at ¶ 1) as to Defendants' request to stay discovery, filed before Plaintiff filed his second amended complaint, and he never requested discovery to respond to the motion to dismiss. Plaintiff's indications in his complaint and response that he would confirm his allegations through discovery are not a sufficient request for discovery. *Reagor*

*v. Okmulgee Cnty. Fam. Res. Ctr.*, 501 F. App'x 805, 811 n.3 (10th Cir. 2012).  Considering the Court's prior notice to Plaintiff that his allegations were insufficient and his failure to request discovery, the Court will not order discovery sua sponte.  *See id.*

Plaintiff states that CSU was motivated to discriminate on the basis of gender due to public pressure favoring accusing parties (D. 46 at ¶ 219).  But again, Plaintiff does not provide evidence that this statement is true.  To support this argument, Plaintiff cites CSU's "Sexual Assault and Violence Prevention" webpage, which states that "[l]ess than 2 percent of reported sexual assaults are false reports" (*id.* at ¶ 219 n.7).  This one statement of fact suggests nothing about public pressure CSU faces or, if there is public pressure, why that pressure motivates CSU to discriminate *on the basis of gender* in any case, let alone Plaintiff's case specifically.  *See Doe v. Univ. of Denver,* 952 F.3d at 1192 (holding that gender-neutral external pressure on school to investigate Title IX claims more rigorously was insufficient evidence to support inference that school's actions "in a particular case were motivated at least in part by gender bias.").  Plaintiff also states that CSU was motivated to discriminate on the basis of gender by external pressure from the United States Department of Education, as evidenced by an ongoing Title IX investigation into CSU concerning sexual violence, procedural requirements, and dissemination of policies (D. 46 at ¶¶ 233–234).  However, this investigation, initiated in 2014, does not by itself suggest that CSU was motivated to discriminate against Plaintiff on the basis of gender in his specific proceedings, 7 years later.  *See Doe v. Univ. of Denver*, 952 F.3d at 1192.

Neither does any of Plaintiff's proffered evidence indicate that CSU discriminated against Plaintiff in his particular proceedings on the basis of his gender.  Plaintiff states that CSU chose to believe the alleged victim's mother because the alleged victim was a "young male child" and chose

to disbelieve Plaintiff because "he is a man" (D. 46 at ¶ 219). Not only is this an entirely conclusory statement without any evidence to back it up, but it also says nothing indicating discrimination *on the basis of gender* because both the child and Plaintiff are male. Plaintiff also states that procedural flaws in his investigation and hearing are evidence of bias (*id.* at ¶ 226). Plaintiff's asserted procedural flaws have been thoroughly discussed above in relation to Plaintiff's Fourteenth Amendment claim, and the Court found that the complaint does not state any procedural flaws. For these reasons, Plaintiff's Title IX claim is unsubstantiated and therefore dismissed.

### C. Counts III–IV: State Law Claims

The Court has disposed of all of Plaintiffs' federal law claims, over which this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. All the remaining claims are brought under state law, which implicates this Court's supplemental subject-matter jurisdiction under 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(c)(3), when all the "federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, the Court dismisses the remaining state-law claims without prejudice for lack of subject-matter jurisdiction.

### IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss (D. 52) is GRANTED. Plaintiff's federal claims are dismissed with prejudice. It is FURTHER ORDERED that the Clerk of the Court shall close this case.

16

DATED May 20, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge